IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: AKOUSTIS TECHNOLOGIES, INC., *et al.*, | : | Chapter 11 |
| | : | |
| Debtors. | : | Bankr. Case No. 24-12796 (LSS) |
| | : | |
| _____ | : | (Jointly Administered) |
| | : | |
| QORVO, INC., | : | |
| | : | |
| Petitioner, | : | |
| v. | : | Civ. No. 25-00006 (GBW) |
| | : | |
| AKOUSTIS TECHNOLOGIES, INC., *et al.*, | : | |
| | : | |
| Respondents. | : | |

## MEMORANDUM

Before the Court is the motion (D.I. 1) ("Motion to Withdraw the Reference") of Qorvo,

Inc. ("Qorvo"), a party in interest in the chapter 11 cases of Akoustis Technologies, Inc. and certain

of its affiliates (together, the "Debtors"), which are currently pending in the United States

Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). Qorvo seeks an order

withdrawing the reference of a contested matter, pursuant to 28 U.S.C. § 157(d) and Rule 5011(a)

of the Federal Rules of Bankruptcy Procedure, which was initiated by Qorvo's objections (Bankr.

D.I. 23, 115)[1] to the Debtors' *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding*

*Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Authorizing the Debtors to*

*Enter into the Stalking Horse Agreement and to Provide Bidding Protections Thereunder, (C)*

*Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving*

*Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form*

---

[1] The docket of the chapter 11 cases, captioned *In re Akoustis Technologies, Inc.*, No. 24-12796-LSS (Bankr. D. Del.), is cited herein as "Bankr. D.I. __." The appendix (D.I. 4) filed in support of the Debtors' opposition to the Motion to Withdraw the Reference (D.I. 3) is cited herein as "A__."

*and Manner of Notice thereof, and (F) Granting Related Relief; an and (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (Bankr. D.I. 14) (the "Sale Motion"). In connection with the Sale Motion, the Bankruptcy Court has approved certain procedures (Bankr. D.I. 176) (the "Bidding Procedures Order"), including a certain agreed process (*id.*, ¶¶ 17-22) which is intended to cleanse the assets to be sold by the Debtors of Qorvo's trade secrets, in compliance with an existing injunction issued by this Court in separate litigation. Because the Sale Motion also ultimately seeks Bankruptcy Court approval of the sale of these assets pursuant to section 363(f) of the Bankruptcy Code, a contested matter remains.

The Court has considered the opposition filed by the Debtors and joined by the Official Committee of Unsecured Creditors (D.I. 3, 5), together with Qorvo's reply in further support of withdrawal (D.I. 14). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. For the reasons set forth herein, the Motion to Withdraw the Reference is denied without prejudice.

## I.    BACKGROUND

### A.    The Qorvo Litigation and the Permanent Injunction

Prior to the chapter 11 cases, on October 4, 2021, debtor Acoustic, Inc. was sued by Qorvo in this Court in a case overseen by the Honorable Jon. P. McCalla, captioned *Qorvo Inc. v. Akoustis Technologies, Inc.*, No. 1:21-cv-01417-JPM (D. Del.) (the "Qorvo Litigation"). Qorvo's complaint alleged, among other things, patent infringement, false advertising, false patent marketing, and unfair competition. Qorvo prevailed. On May 17, 2024, the jury returned a verdict in favor of Qorvo for misappropriation of certain trade secrets and patent infringement, including

2

an award of damages in the amount of $38.6 million (the "Jury Award"). (*Id.,* D.I. 601.) On November 22, 2024, after the resolution of the parties' post-trial motions, the District Court entered an Amended Final Judgment that compiled all of the District Court's findings and rulings into a single judgment. (*Id.,* D.I. 717.) The District Court also granted Qorvo a permanent injunction (*id.,* D.I. 710) (the "Permanent Injunction") that enjoined the Debtors and related parties from (a) possessing, reviewing, using, or disclosing the Qorvo Trade Secret Information,[2] which remain under seal; (b) offering, selling, or distributing products that were made using the Qorvo Trade Secret Information; or (c) advertising, promoting, or offering services utilizing the Qorvo Trade Secret Information. (*Id.,* ¶ 1.) To implement the Permanent Injunction, the District Court ordered the Debtors to conduct a search of their databases in order to identify and purge any information regarding the Enjoined Information,[3] and granted Qorvo the right to audit the Debtors' systems and files to ensure compliance with the Permanent Injunction for two years. (*See id.* at ¶¶ 2–3.) Finally, the District Court permanently enjoined the Debtors from making, using, selling, or otherwise offering to sell in the United States certain products the jury found infringed on two of Qorvo's patents. (*See id.* at ¶ 4.) The District Court maintains jurisdiction to enforce the Permanent Injunction. (*Id.* at 12.) The Debtors appealed the Jury Award and the Permanent Injunction on November 29, 2024. (*Id.,* D.I. 719.)

B.     **The Chapter 11 Cases and the Proposed Sale**

Prior to the chapter 11 cases, the Debtors engaged certain professionals to assist them in understanding their overall financial condition assess and explore strategic options. (*See* Bankr. D.I. 2 ("First Day Decl.") at ¶ 35.) The Debtors and their advisors ultimately determined that a

---

[2] As defined in the Permanent Injunction.
[3] As used herein, the term "Enjoined Information" refers to any confidential Qorvo information as set forth in ¶ 2(a)(iii) of the Permanent Injunction, including any Qorvo Trade Secret Information, as defined therein.

sale process as part of a chapter 11 case was their most viable option (the "Sale Process"). (*See* Bankr. D.I. 15 at ¶ 14.) A prepetition marketing process resulted in the Debtors selecting Gordon Brothers Commercial & Industrial, LLC (the "Stalking Horse Bidder") to acquire only a subset of the Debtors' assets on a liquidation basis to ensure they implicated no Enjoined Information (the "Stalking Horse Bid"). (*See id.* at ¶ 15.) Though no other bidder has made a firm offer, multiple parties have expressed interest in acquiring the Debtors' assets with an intention of continuing the business as a going concern. (*See id.*)

On December 16, 2024 (the "Petition Date"), each of the Debtors filed voluntary petitions commencing the above-captioned chapter 11 cases. The United States Trustee filed a notice of appointment of a committee of unsecured creditors on December 30, 2024. (Bankr. D.I. 93.)

To comply with the Permanent Injunction, provide comfort to bidders, and obtain the highest possible price for the Debtors' assets, the Debtors proposed to "cleanse" any assets necessary for a sale as a going concern to ensure that no assets being sold contain any Enjoined Information. (*See* Sale Motion at 14-15.)

Qorvo asserted that it "is supportive of a process that monetizes property that is not impacted by the [Permanent Injunction], and is willing to work with the Debtors to establish and implement such a process." (Bankr. D.I. 115 at 4.) That said, Qorvo objected to Sale Motion on the basis that the procedures by which the Debtors propose to cleanse the assets: "(i) directly conflict with the [Permanent Injunction], undermining the vetting and cleansing process and timeline established thereunder to protect Qorvo's trade secrets, and (ii) falsely assume that Qorvo's trade secrets can be properly cleansed from Akoustis' entire business on a timeline that conflicts with the expectations in the [Permanent Injunction] and that is unrealistic, unattainable and impractical." (*Id.* at 4-5.)

On January 8 and 9, the Bankruptcy Court conducted a two-day hearing on the Sale Motion. The Debtors offered testimony and documentary evidence that the Sale Process must be completed by May 2, 2025, when they will run out of funds and be unable to operate. Following the close of evidence, the Debtors and Qorvo negotiated and agreed to a process and schedule by which the Debtors may cleanse its assets of the Enjoined Information. (*See* A00358-A00367 ("1/9/25 Tr.") at 162:18–165:7). Rather than merely allowing for an audit of the Debtors' work, as contemplated by the Permanent Injunction, the Debtors agreed to provide Qorvo with a full copy of the data and information comprising and relating to the Proposed Cleansed Assets. (*See* Bidding Procedures Order, at ¶ 17.) To coordinate their work, the parties agreed to exchange search terms to identify any Enjoined Information by no later than January 17, 2025. (*See id.* at ¶ 17.) Thereafter, the parties will have approximately two months to review and search the data before exchanging forensic reports on March 14, 2025. Thereafter, the parties have one week to confer to the extent there is any disagreement over the existence or inclusion of Enjoined Information therein. (*See id.* at ¶ 19.) If the parties cannot reach an agreement, Qorvo may file an objection with the Bankruptcy Court on or before March 21, 2025, and the Bankruptcy Court will hear the objection on March 31, 2025. (*See id.* at ¶¶ 21–22.) Further, the Debtors agreed to, and the Bankruptcy Court approved, a mechanism for Qorvo to receive reimbursement for a substantial amount of costs associated with this process, up to $400,000.00. (*See id.* at ¶ 18.) On January 13, 2025, the Bankruptcy Court entered the Bidding Procedures Order, which overruled with prejudice all objections that were not otherwise withdrawn, waived, or settled. (*See id.* at ¶ 2.)

Notwithstanding that the agreed process is still ongoing, Qorvo does not trust that its rights will be protected in the chapter 11 cases. Accordingly, Qorvo filed its Motion to Withdraw the Reference of the Sale Motion. (*See* D.I. 1.) Qorvo argues that the reference is subject to mandatory withdrawal under 28 U.S.C. § 157(d) because issues related to the Debtors' proposed sale of assets

will require substantial consideration of complex issues of non-bankruptcy law. (*See* D.I. 1, Ex. A at 12-15.) Qorvo further argues that permissive withdrawal is warranted because the District Court retained jurisdiction to enforce the Permanent Injunction, and the Bankruptcy Court cannot adjudicate this matter. (*Id.* at 15-20.)

## II.    JURISDICTION AND APPLICABLE STANDARDS

District courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Pursuant to the authority granted by 28 U.S.C. § 157(a), this Court has referred all cases arising under title 11 to the Bankruptcy Court. *See* Am. Standing Order of Reference, Feb. 29, 2012 (C.J. Sleet). Nevertheless, Congress specified that in certain circumstances district courts are authorized to withdraw the reference to the bankruptcy courts and adjudicate disputes directly. *See* 28 U.S.C. § 157(d). In particular, section 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). Section 157(d) provides two avenues for withdrawing the reference— permissive withdrawal and mandatory withdrawal—depending on the specific facts of the dispute. As discussed below, Qorvo has failed to carry its burden of establishing that relief under either provision is warranted at this time.

## III.    ANALYSIS

### A.    The Motion to Withdraw the Reference Is Not Moot

The Debtors assert that Qorvo has consented to the entry of the Bidding Procedures Order, rendering the Motion to Withdraw the Reference moot. (D.I. 3 at 9.) According to the Debtors,

the Bidding Procedures in their current form were negotiated by the Debtors and Qorvo, to ensure that Qorvo was comfortable with the proposed process to cleanse the Enjoined Information from the proposed sale assets. (*See* A00355 (1/9/25 Tr. at 172:2–4) (Court: "I'm prepared to enter an order consistent with the discussion on the record[] of the resolution that's been reached with Qorvo ....")). Thus, the Debtors submit, it is improper for Qorvo to continue litigating either (i) that the Bankruptcy Court lacks the jurisdiction or the capacity to apply the terms of the Permanent Injunction to a sale under section 363 of the Bankruptcy Code, or (ii) that the timeline or cleanse process in the Bidding Procedures Order in some way violates the Permanent Injunction. (D.I. 3 at 9.)

Qorvo disagrees, asserting that its "agreement to the cleansing process never waived any rights and in no way changes Qorvo's position that this Court, not the Bankruptcy Court, should resolve disputes concerning compliance with the Permanent Injunction." (D.I. 14 at 2.) The Court agrees that Qorvo's ultimate consent to engage in a modified version of the Debtors' proposed cleansing process did not moot or otherwise waive its Motion to Withdraw the Reference of the contested proceeding. Qorvo ultimately disputes that the "vetting and cleansing process and timeline established for the cleansing process" will be sufficient to "properly cleanse [Qorvo's trade secrets] from Akoustis' entire business" consistent with the protections of the Permanent Injunction, so any sale of those assets cannot be approved. The Sale Motion therefore remains contested. Qorvo further asserts that "[t]he Bankruptcy Court does not currently have jurisdiction of the [Permanent Injunction]" and "is not equipped to deal with the complex and highly-technical trade secret, patent law and related issues implicated by these disputes or interpret and enforce the [Permanent Injunction]." (D.I. 1, Ex. A at 5.) The Motion to Withdraw the Reference is properly before the Court.

## B.    Withdrawal of the Reference Is Not Mandatory

"In the District of Delaware, withdrawal is deemed mandatory when (1) consideration of law outside of Title 11 … is necessary for the resolution of the case or proceeding; and (2) the consideration of federal law outside the Bankruptcy Code necessary to resolve the proceeding is substantial and material." *See Pension Benefit Guarantee Corp. v. Cont'l Airlines, Inc. (In re Cont'l Airlines)*, 138 B.R. 442, 444–45 (D. Del. 1992). Not every contested matter that "alleges a violation of federal non-bankruptcy law necessarily requires substantial and material consideration of that law." *SNMP Research Int'l, Inc. v. Nortel Networks, Inc. (In re Nortel Networks, Inc.)*, 539 B.R 704, 708 (D. Del. 2015) (citing *Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc.* 107 B.R 34, 38 (D. Del. 1989)). Mandatory withdrawal of reference is only warranted where the movant demonstrates that "substantial and material consideration of non-bankruptcy law is necessary to resolve the case." *See Cont'l Airlines*, 138 B.R. at 445.

Importantly, courts around the country (including in this district) have circumscribed the seemingly broad reach of section 157(d), noting that "a literal interpretation of this provision could result in an 'escape hatch' through which most bankruptcy matters could routinely be removed to the district court." *Pension Benefit Guaranty Corp. v. Smith Corona Corp. (In re Smith Corona Corp.)*, 205 B.R 712, 714 (D. Del. 1996). Such an outcome clearly not being Congress's intention (particularly for *mandatory* withdrawal of reference), courts have placed a heavy burden on a movant to establish that the matter would require a "meaningful consideration" of non-bankruptcy law, rather than a "simple application of well-settled law" for mandatory withdrawal to apply. *See IRS v. CM Holdings, Inc. (In re CM Holdings, Inc.)*, 221 B.R. 715, 721 (D. Del. 1998) (internal citation omitted); *Energy Development Corp. v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 134 B.R. 808, 811 (D. Del. 1991) ("These guidelines help to distinguish a required 'consideration' of federal law outside the Bankruptcy Code from its 'simple application.' In the

8

latter case, withdrawal of reference is not mandatory."); *see also Cont'l Airlines*, 138 B.R. at 445

("As the party seeking withdrawal of the reference, [movant] bears the burden of demonstrating

that a substantial and material consideration of non-bankruptcy law is necessary to resolve the

case.").

The dispute—at least at this time—boils down to Qorvo's general argument that "[t]he Sale

Motion aims to extinguish the PI, which remains subject to the jurisdiction of the District Court"

and is an attempt by the Debtors to bypass the Permanent Injunction. (*See* D.I. 1, Ex. A, at ¶ 27.)

Hoping to tie this argument to a question of non-bankruptcy law, Qorvo asserts that resolving the

contested Sale Motion "requires substantial and material consideration of non-Bankruptcy Code

laws—namely whether the Debtors' assets continue to infringe on Qorvo's trade secrets and

patents (they do and will unless and until Debtors' assets are cleansed) ...." (*See id.* at ¶ 28.) But

there is no dispute as to this assertion: the Debtors agree that its assets must be cleansed in

accordance with the Permanent Injunction in order to be included in the proposed sale, and they

are working toward that goal. According to Qorvo, the Bankruptcy Court still will be required to

interpret the federal Defend Trade Secrets Act, North Carolina Trade Secrets Protection Act

("NCTSPA"), and U.S. Patent Nos. 7,522,018 (the "'018 Patent") and 9,735,755 (the "'755

Patent")[4] when determining whether the property in question *continues to infringe on Qorvo's*

---

[4] The Debtors assert that "any argument[] related to patent infringement is a 'red herring,' which
Qorvo included simply with the intention of creating the illusion of additional (or, potentially, any)
complexity." (D.I. 3 at 12 n.8.) "By the Sale Process, the Debtors are *not* proposing to sell any
*products* that may infringe upon the patents included in the Permanent Injunction as part of the
Sale Process; they are proposing to sell a subset of their assets used in the manufacture of their
products." (*Id.*) "Patents only cover the production, use, sale, or offering for use/sale of infringing
products—not the equipment used for such production." (*Id.* (citing 35 U.S.C. § 271(a)
("[W]hoever without authority *makes, uses, offers to sell, or sells any patented invention*, within
the United States ... during the term of the patent therefor, infringes the patent.")) (emphasis
added). Qorvo apparently does not dispute that the Debtors are not proposing to sell any products
that may infringe upon the patents included in the Permanent Injunction as part of the sale process.
(*See* D.I. 14.)

*rights*"—thus, presumably *following* the agreed upon cleansing process. (D.I. 1, Ex. A at ¶¶ 28, 6) (emphasis added). No such dispute exists at this time.

Notwithstanding Qorvo's conclusory statements, it has identified no "substantial and material" issue of non-bankruptcy law that is implicated by the Sale Motion or that is necessary to resolve the case, at least at this stage. *See Cont'l Airlines*, 138 B.R. at 445. The Debtors are not asking the Bankruptcy Court to make any determination in the first instance with respect to the Permanent Injunction or Enjoined Information. The District Court has already conducted such analysis when it issued the Permanent Injunction. All that remains is compliance with the Permanent Injunction.

In the Bankruptcy Court's view, the Permanent Injunction is "really clear." (*See* D.I. 4 at A00001-A00183 ("1/8/25 Tr.") at 15.) As it further observed, "[the Permanent Injunction] contemplates the ability to remove and quarantine ... the Qorvo trade secret information, very specifically contemplates that it can be removed. So isn't the only question whether it has been or not?" COUNSEL: Yes." (*Id.* at 17.) The Court agrees with the Bankruptcy Court that, "ultimately, at the end of the day, the debtor can only sell what it owns, and the debtor will have to prove that …. It's the Court's decision, based on the facts and the law and, in this case, the [Permanent] [I]njunction." (*Id.* at 30.) Finally, as the Bankruptcy Court pointed out, the District Court retained jurisdiction to *enforce* the Permanent Injunction. It is in no way remarkable that the Bankruptcy Court may be required to *interpret* the Permanent Injunction; the Bankruptcy Court is regularly required to interpret the orders of other courts in its oversight of chapter 11 cases. (*See id.* at 16:15-17.)

Even considering other cases where "complex" intellectual property issues are at bar, courts in this jurisdiction routinely find that Bankruptcy Courts are well within their powers to apply such law as part of the bankruptcy cases before them. For example, in *SNMP Research Int'l,*

10

*Inc. v. Nortel Networks, Inc.*, the movant initiated an adversary proceeding alleging violations under the Copyright Act. *See* 539 B.R. 704, 707 (D. Del. 2015). Much like here, the movants in *Nortel Networks* asserted that the issues before the bankruptcy court included "complex issues" of federal intellectual property law. *See id.* at 708. According to the movants, such issues would require the bankruptcy court to answer "[w]hat code is owned by SNMP Research and [analyze] whether a work is derivative work and whether that derivative work is itself infringing." *See id.* (citing movants brief) (alterations in original). Moreover, the movant alleged that the case would require the bankruptcy court to apply a "complex method for calculating damages" with "a variety of damages theories." *Id.* Nevertheless, the *Nortel Networks* court declined to find mandatory withdrawal was warranted, noting "this [dispute] merely requires deciding how the law applies to the facts of the case rather than deciphering or interpreting the law," but it was devoid of any allegation that such analysis "will require meaningful (i.e., 'substantial and material') consideration of federal non-bankruptcy law." *See id.* at 708–09. The same is true here. Although the Permanent Injunction necessarily stands upon non-bankruptcy intellectual property law, that the Permanent Injunction must be applied to the proposed cleansed assets does not alone present any novel questions of intellectual property law.

The Court credits Qorvo's assertion that "Qorvo's confidential information includes a broad range of highly complex and technical information concerning the design and manufacture of bulk acoustic wave filters" and that "the technical nature of such information makes the identification, cleansing and audit process complex, difficult and time consuming." (D.I. 1, Ex. A at 3.) It is therefore conceivable that a complex issue may arise in the proposed sale, following the completion of the agreed cleansing process, that requires substantial and material consideration of the federal Defend Trade Secrets Act or the North Carolina Trade Secrets Protection Act," as

Qorvo asserts. No such issue exists at this time, however, or was identified in the pending Motion to Withdraw the Reference.

### C.     There Is No Cause for Permissive Withdrawal

Permissive withdrawal of reference is limited to circumstances "for cause shown." When interpreting the "for cause" aspect of permissive withdrawal, there is a presumption that Congress intended for bankruptcy proceedings to be adjudicated by a bankruptcy court. *See Hatzel & Beuhler, Inc. v. Cent. Hudson Gas & Elec. Corp.*, 106 B.R. 367, 371 (D. Del. 1989) (noting for cause requirement signals as "presumption that Congress intended to have bankruptcy proceeding adjudicated in bankruptcy court unless rebutted by contravening policy." (internal citations omitted)). It is Qorvo's burden to prove cause exists. *See In re Liberty State Benefits of Delaware Inc.*, 2015 WL 1137591 at *2 (D. Del. Mar. 12, 2015) ("As the moving party, [movant] has the burden to prove that cause exists to withdraw the reference." (citation omitted)).

Although the statute does not define "cause shown," the Third Circuit has set forth five factors that may be considered in determining whether cause exists to withdraw the reference: (1) promoting uniformity in bankruptcy administration, (2) reducing forum shopping and confusion, (3) fostering the economical use of the debtors' and creditors' resources, (4) expediting the bankruptcy process, and (5) the timing of the request for withdrawal. *See Pruitt*, 910 F.2d at 1168 (discussing non-exhaustive list of factors). Other factors considered by courts analyzing whether withdrawal is appropriate are whether the claim is a core bankruptcy proceeding or whether it is non-core, and whether the parties have requested a jury trial. *In re NDEP Corp.*, 203 B.R. 905, 908 (D. Del. 1996) (citing *Hatzel,* 106 B.R. at 371, and *In re Orion Pictures Corp.,* 4 F.3d 1095, 1101 (2d Cir.1993)).

Qorvo argues that the *Pruitt* factors weigh in favor of permissive withdrawal because "the Debtors' compliance with the [Permanent Injunction], its enforcement, the prospective cleansing

and Qorvo's audit rights are all inherently for the District Court to oversee, not the Bankruptcy Court." (D.I. 1, Ex. A at 6.) Qorvo argues that enforcing the Permanent Injunction requires no analysis of substantive bankruptcy law, is unrelated to any issue of uniform bankruptcy administration, that having this Court decide the myriad dispute and issues that may arise in the context of the Sale Motion is the more economical and expeditious option, and that only the District Court, with its institutional experience with these cases and issues, can expedite the process. (*See id.* at 18-20.)

The Court disagrees that withdrawing the reference of the Sale Motion at this early stage, and prior to any concrete dispute over compliance with the Permanent Injunction, would advance the considerations considered under *Pruitt,* especially here, where certain milestones apply, the Debtors are running out of funds, time is of the essence, and any return to creditors depends on the proposed sale. As noted, it is conceivable that a complex issue may arise in the proposed sale, following the completion of the agreed cleansing process, that requires substantial and material consideration of non-bankruptcy law, or that would be more appropriate for this Court to resolve, in which case, withdrawal of the reference may very well reduce confusion, foster the economical use of the debtors' and creditors' resources, and ultimately expedite the bankruptcy process. That said, Qorvo's request is premature. There is not yet any dispute as to the enforcement of the Permanent Injunction—only a consensual process which may lead to an outcome consistent with the Permanent Injunction.

As Qorvo has repeatedly said, "Qorvo has no objection to—and, indeed supports—the sale of Akoustis' assets *so long as Akoustis complies with the Permanent Injunction and removes Qorvo's trade secrets from its files*." (D.I. 14 at 10 (emphasis in original).) A consensual process to accomplish this is underway. The Court recognizes that, notwithstanding the parties' best efforts, the Debtors may be unable to cleanse their assets of Qorvo's trade secrets, in compliance

13

with the Permanent Injunction, before the Debtors run out of funds and/or in time to satisfy a prospective purchaser. The Court further recognizes that, at the conclusion of the agreed cleansing process, the parties ultimately may dispute whether removal of Qorvo's trade secrets from the Debtors' assets in compliance with the Permanent Injunction has occurred. While the Court is confident in the Bankruptcy Court's ability to interpret and apply the terms of the Permanent Injunction, the Court will not foreclose Qorvo's right to renew its Motion to Withdraw the Reference at an appropriate time, identifying such a dispute, and the Court will endeavor to consider it on an expedited basis. Absent a concrete dispute over enforcement of the Permanent Injunction, however, no cause exists for this Court to interject itself into the chapter 11 sale process.

## IV.    CONCLUSION

For the reasons explained above, the Court will deny the Motion to Withdraw the Reference without prejudice to Qorvo's right to renew this request at such time as the consensual cleansing process has concluded and there remains a complex dispute as to compliance with the Permanent Injunction. A separate Order will be entered.

January 29, 2025

_____
UNITED STATES DISTRICT JUDGE

14